IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

NOVEMBER 1997 SESSION

FILED

December 23, 1997

Cecil W. Crowson
Appellate Court Clerk

WILLIE JOSEPH LAGANO,           )
                                )
            Appellant,          )      No. 01C01-9701-CC-00009
                                )
                                )       Lincoln County
v.                              )
                                )       Honorable Charles Lee, Judge
                                )
STATE OF TENNESSEE,             )       (Post-Conviction)
                                )
            Appellee.           )


For the Appellant:                      For the Appellee:

N. Andy Myrick, Jr.                     John Knox Walkup
116 West Market Street                  Attorney General of Tennessee
Fayetteville, TN 37334                        and
                                        Elizabeth B. Marney
                                        Assistant Attorney General of Tennessee
                                        450 James Robertson Parkway
                                        Nashville, TN 37243-0493

                                        W. Michael McCown
                                        District Attorney General
                                              and
                                        Weakley E. Barnard
                                        Assistant District Attorney General
                                        215 E. College Street
                                        P.O. Box 904
                                        Fayetteville, TN 37334



OPINION FILED:_____


AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The petitioner, Willie Joseph Lagano, appeals as of right from the judgment of the Lincoln County Circuit Court denying him post-conviction relief. He was convicted in September 1995 upon his guilty pleas for the offenses of aggravated burglary, a Class C felony, and theft of property worth over one thousand dollars, a Class D felony. He was sentenced to six and three years, respectively, to be served concurrently to each other but consecutively to a revoked suspended sentence of four years. He contends that his pleas resulted from the ineffective assistance of counsel and were not knowingly and voluntarily entered. We disagree.

At the evidentiary hearing, the petitioner complained about the fact that his former attorney on the case joined the district attorney general's office during the prosecution and that his trial attorney did nothing about it. He testified that he only met with his trial attorney two or three times and told him that there were alibi witnesses. However, the attorney never talked to the witnesses and kept urging him to plead guilty. He said that the attorney did not investigate the case. The petitioner denied telling his attorney that his witnesses would testify to anything that the petitioner wanted them to say.

The petitioner testified that on the day of the pleas, he kept telling the attorney that he did not want to plead guilty, but the attorney wanted him to plead. The petitioner also said that before the pleas, the assistant prosecutor talked to him about his pleas without his attorney present. He said that he was pressured to plead guilty. The petitioner denied reading the petition to plead guilty or the guilty plea document, although he signed them. When asked if he committed perjury in his answers to the trial court's questions about those documents at the guilty plea hearing, the petitioner said that his attorney had told him to say yes to everything he asked.

2

The trial attorney testified that he met with the petitioner four times and that the petitioner mentioned alibi witnesses, but it was to the effect that they would say anything for him. The attorney did not interview the witnesses because he thought it involved perjury. However, he talked to the arresting officer who found a stolen shirt on the petitioner. He had a discovery conference with the prosecutor and went over the preliminary hearing tape. He stated that he went to the two pawn shops in Alabama where stolen items had been found. At one shop, the person specifically described the petitioner. At the other, the pawn ticket had the petitioner's social security number on it. The attorney said that the petitioner also told him that there were other items not yet found by the police.

The attorney testified that the petitioner did not tell him about his former attorney presenting a conflict of interest. Also, he recalled the assistant prosecutor talking to the petitioner on the day of the pleas, but it was mainly casual conversation taking about two minutes. He denied walking away during the conversation.

The attorney acknowledged that the petitioner had a difficult time deciding what to do. However, he denied putting any pressure on him to plead. He stated that he went over the petition to plead guilty in detail with the petitioner and explained to the petitioner his rights. He believed that the petitioner understood everything. Also, he denied telling the petitioner to answer yes to all of the trial court's questions at the hearing.

The petitioner's attorney at the preliminary hearing testified that the former attorney who joined the district attorney general's office took no part in the hearing. The district attorney general testified that the petitioner's former attorney was shielded from the rest of the staff with strict orders not to communicate about the case. He said that he knew of no improper communication.

3

Stacey Atchley testified that she had known the petitioner for three years. She said that the nights the burglaries[1] were supposed to have happened, the petitioner was with her. She stated that he did not bring anything into her house and there was nothing in her car, which the petitioner used. She said that she would not lie for the petitioner and that she had been available to testify on his behalf. She described their relationship as more than just friends, but she denied any romantic involvement.

In a post-conviction case, the burden is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-210(f). Relative to a claim that the ineffective assistance of counsel resulted in an invalid guilty plea, a petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted upon going to trial. Hill v. Lockhart, 464 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). On appeal, we are bound by the trial court's findings unless the evidence of record preponderates against those findings. See Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

In this case, the trial court entered detailed findings that discredited the petitioner's testimony and accredited that of the trial attorney. In pertinent part, the findings and conclusions reached by the trial court are as follows:

> The court must first determine the credibility of the witnesses that have appeared before it today because there are issues that cannot be reconciled.
>
> The defendant alleges certain events to have occurred, certain conversations to have occurred, certain representations to have been made to him which the State's position is contradictory.
>
> The defendant comes in first and says that he didn't tell the court the truth the first time. So he wants the court to believe him this time. Even after being advised that if he made

---

[1] The petitioner was originally charged with two burglaries and two thefts.

4

a false statement concerning a material fact that he could be charged with perjury.

He lied to the court on several different occasions during the plea acceptance hearing. He tries to explain that by saying that he was only doing what his lawyer told him to do and his lawyer told him to answer "yes" regardless of what the question was and the transcript contains two "no" answers which obviously is not what transpired.

It has also been brought out [peripherally] that Mr. Lagano prior to the entry of this plea had been previously convicted of felonies. Therefore that has a great bearing on the court and also upon his credibility as a witness.

The court finds Mr. Lagano's credibility before this court to be virtually [nil]. It is difficult for this court to understand how it is that you can explain to someone that they will be charged with perjury if they make a false statement concerning a material fact and [then] get up and lie. Mr. Lagano either lied today or he lied on September 19, 1995. There [are] no two ways around it.

. . .

The court finds Mr. Lagano's credibility to be [nil]. The court accepts credibility and finds [the trial attorney's] statements before the court are the more credible and accredits his testimony and so finds that [the trial attorney] consulted with Mr. Lagano on several different occasions; he conducted an independent investigation to verify what the State's theory of the case was which was recent possession of stolen property.

The court finds that [the trial attorney] did not insist upon a plea from Mr. Lagano. The court finds that . . . [the trial attorney] did not suggest to Mr. Lagano that he would be released in a specific period of time.

With regard to the issue of whether Mr. Lagano would have entered a plea had he had available Ms. Atchley's testimony, [the trial attorney's] explanation as to why he did not contact Ms. Atchley is that he had the impression that the defendant was offering up perjured testimony. Unless an attorney knows the testimony is perjured, then he has a duty to interview the witnesses to evaluate their testimony to determine if whether or not it is perjured testimony and if it is then he does not have a duty to offer that testimony.

In this case . . . the testimony before the court does not indicate that the attorney knew the testimony was perjured; that he had a very strong suspicion it was perjured. That calls upon whether or not that is a tactical decision made by the attorney not to [pursue] that and the court cannot really call that a tactical decision.

5

The inquiry does not end there. The court must go further to determine whether or not if this testimony had been available if the attorney had interviewed this witness it would have had a bearing upon the outcome of the case.

It would not. This witness that appeared before this court today has a close, and [the trial attorney] was correct, a very suspicious relationship with the defendant. She made a poor witness on behalf of defendant today. The court had an opportunity to sit and judge her demeanor in answering the State's questions as well as those of the court. Quite frankly she probably would have hurt the defendant more than she would have helped him had it gone to trial.

That is not the issue before court. Not whether or not this witness was believable or not. The court finds in the court's mind she would not have had an [effect] upon the outcome of the case and therefore the failure to interview her was not fatal to Mr. Lagano's defense.

The question before the court is whether Mr. Lagano entered his plea voluntarily and knowingly. He told me he did. He told me no threats had been made against him. He told me he broke into these people's houses and stole their stuff. Today he says he didn't.

The court finds this plea was entered into freely and voluntarily by the defendant. He knew what his choices before him were and that the attorney gave to him the only advice that he could. Here are your choices. It is up to you to decide.

. . .

For those reasons the [petitioner's] . . . petition is respectfully denied.

6

Our review of the record finds nothing that would give rise to a question about the trial court's findings and conclusions. The judgment of the trial court is affirmed.

                                                _____
                                                Joseph M. Tipton, Judge

CONCUR:


_____
John H. Peay, Judge


_____
David H. Welles, Judge